UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

IN RE: ANTHONY T. MARSHALL                          NO.:  3:15-MC-88-JWD

RULING ON ORDER TO SHOW CAUSE

Having provided attorney Anthony T. Marshall with (1) notice of the possibility of sanctions for his willful failure to comply with this Court's orders, local rules, and the Louisiana Rules of Professional Conduct, and (2) an opportunity to show cause why sanctions should not be imposed, the Court now determines that sanctions are warranted based on his conduct in two separate actions: civil action number 3:14-CV-00231, *Spears v. CB&I Inc.*, (hereinafter "*Spears*") and civil action number 3:14-CV-00088, *Reams v. Napolitano* (hereinafter "*Reams*").[1] Accordingly, for the reasons fully explained below,

**IT IS ORDERED** that **ANTHONY T. MARSHALL'S** admission to practice in the United States District Court for the Middle District of Louisiana is hereby **SUSPENDED**, effective immediately, for a period of **SIXTY (60) DAYS**. **IT IS FURTHER ORDERED** that, within the next 180 days, **ANTHONY T. MARSHALL** complete **SIX (6) HOURS** of continuing legal education in the area of ethics and/or professionalism with a focus on an attorney's duties of diligence to his client and the court as described in La. Rules of Prof'l Conduct 1.3, 3.4(c), and 3.4(d) and to present proof of same to the Clerk of this Court.

**I.    BACKGROUND**

This disciplinary action arises from the conduct of attorney Anthony T. Marshall in two cases: *Spears* and *Reams*. Marshall's conduct in these two cases is summarized separately below.

---

[1] In the sections outlining Marshall's conduct in *Spears* and *Reams*, the document references are to documents in those cases only. Otherwise, the document number for each case will be preceded by the case name.

USCA, LAED, LAWD, LAMB and Supreme Court of Louisiana

## II.   CARL SPEARS V. CB&I, INC., 3:14-CV-00231-JWD-RLB.

On August 3, 2015, pursuant to 28 U.S.C. § 636(e)(6)(B)(iii), United States Magistrate Judge

Richard L. Bourgeois, Jr., issued a Report and Recommendation Certifying Facts Constituting

Contempt. (Doc. 45.) The following are the Report's Certified Findings of Fact.

Pursuant to 28 U.S.C. § 636(e)(6)(B), the undersigned certifies the following facts supporting a finding that Plaintiff's counsel, Anthony T. Marshall, should be held in civil contempt:

1. On April 16, 2014, Mr. Marshall initiated this action on behalf of Plaintiff by filing a complaint against CB&I, Inc. ("Defendant"). (R. Doc. 1).

2. On June 27, 2014, the undersigned set a scheduling conference for August 7, 2014, and required that a joint status report be filed by Mr. Marshall no later than July 24, 2014. (R. Doc. 2)

3. On August 4, 2014, the undersigned reset the scheduling conference for November 20, 2014, and reset the deadline for Mr. Marshall to file a joint status report to November 6, 2014. (R. Doc. 3). The undersigned reset these deadlines on the basis that Defendant had not yet been served with process.

4. On August 18, 2014, over 120 days after the complaint was filed, Mr. Marshall obtained a summons to serve process on Defendant. (R. Docs. 5, 6).

5. On November 7, 2014, Defendant moved for leave to separately submit its inserts to the status report on the basis that Mr. Marshall did not respond to defense counsel's communications regarding the filing of a joint status report. (R. Doc. 16).

6. On November 12, 2014, the undersigned granted Defendant's motion for leave to file separately its inserts to the statute [sic] report into the record. (R. Doc. 17). The undersigned further ordered Mr. Marshall to show cause, in writing, why sanctions should not be imposed for his failure to submit a status report as ordered.

7. On November 17, 2014, Mr. Marshall filed a response to the show cause order stating "that he has been out of state for 10 days taking care of a family emergency." (R. Doc. 19). Mr. Marshall did not provide any more details regarding the family emergency.

8. On November 20, 2014, Mr. Marshall did not appear before the undersigned for the scheduling conference that was set over three and a half months earlier. (R. Doc. 22). Dominque Barnes, an attorney that is not enrolled in

2

this matter, does not represent Plaintiff, and does belong to Mr. Marshall's firm attended the conference on Mr. Marshall's behalf. Ms. Barnes represented that Mr. Marshall had a trial in New Orleans and could not attend the conference. At no point in time prior to the conference did Mr. Marshall inform the undersigned that he had a conflict with the scheduling conference, that he would not attend the conference, or that an attorney who was not enrolled in the matter and did not represent Plaintiff would appear in his place. The undersigned ordered Mr. Marshall to show cause, in person, on December 17, 2014, why sanctions should not be imposed on him pursuant to Rule 16(f) of the Federal Rules of Civil Procedure for his failure to submit a Status Report as ordered and failure to appear at the scheduling conference.

9. On December 17, 2014, the undersigned held a show cause hearing. (R. Doc. 25). The undersigned had to take a recess to allow time for Mr. Marshall to appear as he was not present when the case was called. After Mr. Marshall arrived, and the undersigned resumed the proceeding, Mr. Marshall consented to a court order requiring him to reimburse Defendant for an hour of attorney's fees in connection with the November 20, 2014 conference.

10. On December 18, 2014, the undersigned issued an order requiring Mr. Marshall to pay Defendant $306.00 in sanctions, pursuant to Rule 16(f) of the Federal Rules of Civil Procedure and upon consent of the parties, for his failure to attend the November 20, 2014 scheduling conference. (R. Doc. 27).

11. On March 17, 2015, Defendant filed a motion to compel responses to discovery requests propounded on December 17, 2014. (R. Doc. 30). Defendant made several attempts to obtain discovery responses without court intervention through written communications directed at Mr. Marshall dated January 22, 2015 (R. Doc. 30-4); January 27, 2015 (R. Doc. 30-5); and February 23, 2015 (R. Doc. 30-6). On February 5, 2015, Mr. Marshall represented to defense counsel that he would "hand deliver the discovery responses by Friday, February 6, 2015." (R. Doc. 30-7). Defendant represents it they (*sic*) did not receive these responses as of the date the motion to compel was filed. (R. Doc. 30-1 at 4).

12. On March 19, 2015, the undersigned issued a briefing schedule requiring any response to the motion to compel to be filed on or before March 27, 2015. (R. Doc. 31).

13. On April 2, 2015, Mr. Marshall filed a motion for leave to file a response to the motion to compel, representing that "[d]ue to health issues, counsel has not been in his office prior to the filing deadline." (R. Doc. 32). In support of his motion, Mr. Marshall provided the additional representations:

> 1) Due to health issues of the undersigned counsel, counsel has been unable to meet with the plaintiff to complete the discovery [sic] responses.

3

> 2) Counsel is meeting with his client on Saturday, April 4, 2015, to complete the responses to discovery.

> 3) The plaintiff will be able to electronically deliver responses to the defendant's discovery by Saturday, April 4, 2015.

(R. Doc. 32-1). Mr. Marshall has not subsequently identified to the undersigned the nature of his health issues.

14. On April 2, 2015, the undersigned granted in part Defendant's motion to compel and ordered Plaintiff to provide responses to the outstanding discovery no later than April 4, 2015. (R. Doc. 33). This order was based on the specific representation by Plaintiff's counsel that he would meet with Plaintiff and provide responses to the outstanding discovery through electronic delivery on April 4, 2015.

15. On April 16, 2015, Defendant filed a supplemental and renewed motion to compel the same discovery responses. (R. Doc. 35). According to Defendant, Mr. Marshall did not provide the outstanding discovery responses on April 4, 2015.

16. On April 20, 2015, the undersigned ordered any response to Defendant's supplemental and renewed motion to compel to be filed no later than April 24, 2015. (R. Doc. 36). No opposition was filed.

17. On May 18, 2015, the undersigned granted Defendant's supplemental and renewed motion to compel and awarded sanctions pursuant to Rule 37(b) of the Federal Rules of Civil Procedure, for his failure to respond to the undersigned's previous orders. (R. Doc. 37). The undersigned ordered Plaintiff to provide responses to the outstanding discovery requests, without objections, no later than May 25, 2015. The undersigned ordered Defendant to file an affidavit of reasonable expenses incurred in bringing its supplemental and renewed motion to compel no later than June 1, 2015, with any response to be filed no later than June 7, 2015.

18. On May 20, 2015, the undersigned set a telephone status conference to be held on May 26, 2015. (R. Doc. 38).

19. On May 26, 2015, Mr. Marshall did not make himself available for the telephone conference call. (R. Doc. 40). After the scheduled time for the telephone call, Mr. Marshall contacted the undersigned's chambers and advised the undersigned's staff that he has been out on medical leave and was unable to take the phone call. He also offered to provide additional information about the nature of his leave. The undersigned ordered Mr. Marshall to show cause, in writing, no later than June 4, 2015, why sanctions should not be imposed for his failure to attend the telephone conference and, considering the potentially

4

sensitive nature of the information at issue, granted leave to file his response under seal, if necessary. (R. Doc. 40). To this date, Mr. Marshall has not responded to this show cause order.

20. On May 28, 2015, Defendant filed a second supplemental and renewed motion to compel, representing that it had still not received any discovery responses. (R. Doc. 39).

21. On June 1, 2015, defense counsel submitted an affidavit of expenses (R. Doc. 41) as ordered by the undersigned on May 18, 2015 (R. Doc. 17). Defense counsel represent that Defendant incurred a total of $1,653.50 in attorneys' fees with regard to bringing the original motion to compel and supplemental and renewed motion to compel. No response to the reasonableness of these expenses was filed by June 7, 2015 or since that date.

22. On July 7, 2015, Defendant filed a motion for extension of fact discovery deadline by 60 days in light of Plaintiff's continued failure to provide discovery responses. (R. Doc. 40).

23. On July 23, 2015, Mr. Marshall filed a motion for leave to provide discovery responses on July 27, 2015. (R. Doc. 43). In support of his motion, Mr. Marshall provided the following representations:

> 1) Counsel's mother, who had been in the Critical Care Unit at Oschner Clinic located in Jefferson, Louisiana, for two months, died on July 17, 2015.

> 2) Counsel conveys to the court that he was not physically or mentally able to properly respond to the defendant's discovery requests.

(R. Doc. 43). Mr. Marshall makes no further representations regarding why he failed to provide discovery responses within 30 days of being served on December 17, 2014 (as required by Rules 33 and 34 of the Federal Rules of Civil Procedure), on February 6, 2015 (as represented to defense counsel), on April 4, 2015 (as represented to the undersigned), or at any time since being ordered to do so by the undersigned in the orders dated April 2, 2015 (R. Doc. 33) and May 18, 2015 (R. Doc. 37).

24. On July 28, 2015, the undersigned granted Defendant's second supplemental and renewed motion to compel and request for extension of the discovery deadline. (R. Doc. 44). The undersigned also ordered Mr. Marshall to pay the total of $1,653.50 in expenses incurred by Defendant in bringing its original motion to compel and first supplemental and renewed motion to compel. Finally, the undersigned denied Mr. Marshall's motion for leave to provide discovery responses on July 27, 2015, as he is under a continuing duty to provide such responses pursuant to the undersigned's previous orders.

25. The record indicates that Plaintiff's failure to provide discovery responses is solely attributable to the acts and omissions of his counsel, Mr. Marshall.

(Doc. 45).

After receiving Magistrate Judge Bourgeois' Report and Recommendation, this Court issued an Order to Show Cause to Marshall to appear on October 8, 2015, and show cause "why he should not be held in civil contempt for the reasons discussed in the report and recommendation..." (Doc. 46). He was further ordered to "file a written response to this show cause order setting forth his position", including any documents supporting his position, by September 24, 2015. (*Id.*)

On September 3, 2015, a Joint Notice of Settlement was filed into the record, notifying the Court of the settlement of the underlying claim. (Doc. 47.) On September 21, 2015, the Court entered a 60 Day Order of Dismissal but added:

Although a 60 day order of dismissal has been entered and this matter has been settled, the show cause hearing for **Anthony T. Marshall** on **Thursday, October 8, 2015 at 1:30 PM** before United States District Judge John W. deGravelles to show cause why he should not be held in civil contempt for reasons discussed in the report and recommendation by the Magistrate Judge... remains in effect. The Court also notes that the Thursday, **September 24, 2015**, deadline for Mr. Marshall to respond in writing and the deadline for counsel for the Defendant to set forth his position, if any, also remains in effect.

(Doc. 48, emphasis in original.)

Despite this order, Marshall filed nothing on or before September 24, 2015. On September 28, 2015, he filed a pleading entitled "Motion for Leave to File Discovery Responses." (Doc 50.)  In the motion, Marshall asked to be given until July 27, 2015 to provide written responses to discovery and that because of his mother's illness and death on July 17, 2015, he "was not physically or mentally able to properly respond to defendant's discovery

6

requests." (Doc. 50.) The proposed order asked the Court to give Marshall until July 27, 2015 to respond to outstanding discovery. (*Id.* at 3.) However, there was no outstanding discovery since the case had been settled.

Attached to this motion was an exhibit styled "Response to Show Cause Order, (Doc. 50–2), which made the following points:

1) the underlying case settled on September 3, 2015;

2) "Counsel for Plaintiff is certain that counsel for Defendant can attest to the fact that the level of communication between the parties increased dramatically in the month of August, 2015";

3) his mother had suffered an illness and ultimately died, and his failures were attributable  to his grieving over her illness and death; and

4) he attached an undated newspaper article about a trial in which Marshall had been trial attorney.

On the following day, September 29, 2015, Marshall filed a Motion to Strike (Doc. 52) and a substituted pleading entitled Motion for Leave to File a Response to Show Cause Order (Doc. 51). In it Marshall made the following additional points:

1) he assumed that when the underlying case settled, the show cause hearing regarding his possible contempt "would be cancelled"; and

2) he had been in a four day jury trial the week before his September 24, 2015 deadline for his written response, and he again attached a copy of the undated newspaper article.

On September 28, 2015, the Court sent notice changing the date of the show cause hearing to October 5, 2015 at 1:30 PM. (Doc. 49.)

7

At the time of the show cause hearing, defense counsel, Christopher Morris, was present. (Doc. 56 at 1.) However, Marshall was not present, and the Court recessed the hearing to see if Marshall would appear. (*Id*.)

Marshall arrived to the hearing late, apologizing to the Court for his late arrival and explaining that he had been in state court in New Orleans that morning. (Doc. 59, Transcript of October 5, 2015 hearing at 4.) In response to questioning by the Court, he admitted that, although he had a cell phone, he had not called to advise the Court that he would be late. (*Id*.) He admitted that he had not done any research to confirm the soundness of his "assumption" that the show cause hearing would be cancelled once the underlying case settled. (*Id*. at 8-9.) He stated that he had not called the Court to determine whether the show cause hearing was still set. (*Id*. at 9.)

The Court advised Marshall that an *en banc* show cause hearing would be set and he would be notified of the time and place. (*Id*. at 16-17.) The Court advised him that he would be asked to provide a written response. (*Id*. at 16.) The Court emphasized the need for him to produce a detailed explanation and documentation for any reasons he might provide as to why he had failed to follow the Court's orders and local rules. (*Id*. at 16–17.)

On the same day, October 5, 2015, Marshall filed a Motion for Reconsideration of Order to Show Cause (Doc. 54), which motion was denied. (Doc. 57.)

### III.    REAMS V. NAPOLITANO, 3:14-CV-00088-JWD-RLB

In this case, Plaintiff is represented by Anthony T. Marshall. After the original complaint of *pro se* Plaintiff Stephen M. Reams was dismissed without prejudice (Doc. 25), attorney Anthony T. Marshall enrolled as his attorney on February 24, 2015 (Docs. 26, 28) and filed an amended complaint on behalf of Plaintiff. (Doc. 27.) Defendant Janet Napolitano then filed a Motion to Dismiss Amended Complaint on March 27, 2015. (Doc. 33.) A scheduling order was

8

issued requiring that Plaintiff file his opposition on or before April 20, 2015. (Doc. 34.) An

opposition was not filed timely. When the opposition was filed on May 5, 2015, it consisted of a

two page brief with one citation of law. (Doc. 37 at 2.) The argument consisted of Plaintiff's

argument that Defendant was "engaging in semantics" and that "Plaintiff simply wants to have

his day in court." (*Id*. at 2.)

On July 6, 2015, the Court issued an order setting oral argument for July 28, 2015. In

addition, "Plaintiff's counsel [was] ordered to file a meaningful brief in opposition to

[Defendant's] motion or concede the correctness of the motion on or before July 16, 2015."

(Doc. 41.)

When Marshall failed to respond by July 16, 2015 to the Court's order of July 6, 2015,

the Court issued a show cause order requiring Marshall to show cause on July 28, 2015, why he

should not be held in contempt for failing to follow the Court's July 6 order. (Doc. 43.)

At the hearing on the merits of the motion, Marshall explained that he had filed his

supplemental brief late (Doc. 51, Transcript of July 28, 2015 hearing at 5). Based on the briefs

and Marshall's admissions made in oral argument (*Id*. at 6-7), Defendant's motion was granted,

the case was dismissed without prejudice and Marshall was given until August 27, 2015 to file

yet another an amended complaint to cure the deficiencies of his previous pleadings. (*Id* at 8-9;

Doc. 48 at 1-2).

At the contempt hearing:

Mr. Marshall advised the Court that his mother recently passed away and that the
grieving process has negatively affected his work. Counsel expressed his
apologies to the Court. The Court expressed to Mr. Marshall how his actions are
affecting his clients. The Court takes the matter of sanctions under advisement
and will discuss this matter with Judge Brady and Magistrate Judge Bourgeois.
The Court understands Mr. [Marshall's] reassurance to this Court that this type of
behavior will never happen again. The Court then advised Mr. Marshall that he
faces some very serious consequences should this activity/behavior reoccur.

9

(Doc. 48 at 2.)

## IV.    DISCUSSION

### A. Legal Standard

It is beyond dispute that "a federal court has the power to control admission to its bar and to discipline attorneys who appear before it." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43, 111 S. Ct. 2123, 2132, 115 L. Ed.2d 27 (1991); *see also United States v. Nolen*, 472 F. 3d 362, 371 (5th Cir. 2006) ("Courts enjoy broad discretion to determine who may practice before them and to regulate the conduct of those who do."). While this power is "incidental to all Courts," it is nevertheless "one which ought to be exercised with great caution." *See Ex parte Burr*, 22 U.S. 529, 531, 6 L. Ed. 152 (1824). Accordingly, the Supreme Court and the U.S. Fifth Circuit Court of Appeals have provided clear guidance on the procedures District Courts must follow when considering whether to sanction attorneys for violating court rules. First, "[w]hen a court undertakes to sanction an attorney for violating court rules, it is incumbent upon the sanctioning court to observe scrupulously its own rules of disciplinary procedure." *Matter of Thalheim,* 853 F.2d 383, 390 (5th Cir. 1988). Second, "attorney discipline proceedings require proof only by clear and convincing evidence." *Sealed Appellant 1 v. Sealed Appellee 1*, 211 F.3d 252, 254 (5th Cir. 2000). Finally, where potential sanctions include suspension and/or disbarment, "due process requires notice and an opportunity to be heard." *Id.*; *see also In re Grodner*, 587 F. App'x 166, 170 (5th Cir. 2014).

As stated in the Order to Show Cause, Marshall faces the possibility of sanctions for the violation of this Court's Local Rules and the Louisiana Rules of Professional Conduct. (*Marshall*, Doc. 1 at 11-13.) Specifically, the Order to Show Cause provides:

The District Court's Local Rules provide, in pertinent part, (1) "[t]his court ... adopts the Rules of Professional Conduct or the Louisiana State Bar Association,

as ... may be amended from time to time by the Louisiana Supreme Court," M.D. LR83(b)(6); (2) "every attorney permitted to practice in this court shall be familiar with these rules," M.D. LR83(b)(10); and (3) [w]illful failure to comply with any of them ... shall be cause for such disciplinary action as the court may see fit, after notice and hearing," M.D. La. LR83(b)(10). In turn, Louisiana's Rules of Professional Conduct require that (1) "[a] lawyer shall act with reasonable diligence and promptness in representing a client," La. Rules of Prof'l Conduct 1.3 (2015); (2) " [a] lawyer shall not ... knowingly disobey an obligation under the rules of a tribunal, except for an open refusal based on an assertion that no valid obligation exists," La. Rules of Prof'l Conduct 3.4(c) (2015); and (3) "[a] lawyer shall not ... in pretrial procedure ... fail to make reasonably diligent effort to comply with a legally proper discovery request by an opposing party" La. Rules of Prof'l Conduct 3.4(d) (2015).

(*Id.* at 11-12.)

In sum, before the Court may discipline Marshall for violation of its Local Rules, there must be clear and convincing evidence, following notice and an opportunity to be heard, finding that Marshall willfully failed to comply with any Local Rule, including Louisiana's Rules of Professional Conduct.

### B. Marshall's Written Response

In his Memorandum in Response to Order to Show Cause (Doc. 2-1), Marshall blames his failure to appear for the November 20, 2014 scheduling conference in *Spears* (which had been set some three and a half months earlier) on his involvement in a "critical hearing" in a state court criminal matter in New Orleans. (*Id.* at 2.) He argues that it was sufficient to send to the conference, without notifying or gaining permission of the Magistrate Judge, another attorney as "stand in counsel," although that attorney did not represent his client, was not a member of his firm and was not enrolled as an attorney in the case. (*Id.*) Despite his failure to appear personally at this court-ordered conference, Marshall maintains that "he has never missed any court ordered court date in any action referenced in this order to show cause." (*Id.* at 1-2.)

11

He concedes that he was late for his December 17, 2014 show cause contempt hearing before the Magistrate Judge (*Spears*, Doc. 25) but argues that he "call[ed] to inform the court that he would be arriving a few minutes late." (*Marshall*, Doc. 2-1 at 3.) At the hearing, he advised the court that his failure to file the court-ordered joint status report was because he had been out of state due to a death in the family. He apologized for being late and consented to pay his opponent's attorney's fees. (*Id*.)

Marshall then argues that beginning in February, 2015 and culminating in her death on July 17, 2015, his mother's condition "deteriorated rapidly, causing her to be hospitalized in three separate hospitals between Houma, Louisiana and New Orleans, Louisiana." (*Id*.) As a result, he was out of the office a great deal and "was overcome with grief and depression to the point where counsel became ill himself." (*Id*.) He claims that after his mother died, he "was able to pull himself together." (*Id*. at 4.) Without arguing the specifics of many of the Magistrate Judge's findings about Marshall's conduct during this time frame (but conceding the accuracy of the Magistrate Judge's findings),[2] Marshall argues, in essence, that his failures to respond to multiple court directives and orders as well as discovery during this time are all attributable to his reaction to his mother's illness and death.[3]

As to the August 4, 2015 order requiring him to address in writing by September 24, 2015 why he should not be held in contempt, (*Spears*, Doc. 46), Marshall fails to address in his memorandum why he did not file a written response as per the order, except to say "The Spears case ultimately settled amicably in September 2015."[4] (*Id*. at 4.) As to the minute entry of the

---

[2] "Counsel does not dispute any of the findings put forth by the Honorable Magistrate Judge Bourgeois." (Doc. 2-1 at 5.)

[3] This includes Marshall's failure to comply with the Court's order in the Reams case "to file a meaningful brief in opposition to [Defendant's] motion or concede the correctness of the motion…" (*Reams*, Doc. 41) (*Marshall*, Doc 2-1 at 5-6.)

[4] At the October 5, 2015 hearing, Marshall said that he did not respond in writing because he "assumed" that because the underlying case settled, he no longer had an obligation to respond to Court's show cause order. (*Spears*

Court announcing the settlement but warning Marshall that the "**Thursday September 24, 2015**

deadline for Marshall to respond in writing…remains in effect[]", (*Spears*, Doc. 48, emphasis in

the original), Marshall says that he "did not read the language of the minute entry or the language

contained in the closure order as counsel was focused squarely [on an upcoming jury trial]."

(*Marshall*, Doc. 2-1 at 4.)

 Marshall does not address in his Memorandum why he was late for the October 5, 2015

contempt hearing although he explained at the hearing itself that he had been in Court in New

Orleans that morning and had rushed to get back on time. (*Spears*, Doc. 59 at 4.) At the hearing,

he admitted that, although he had a cell phone with him, he made no attempt to call the Court to

say he would be late. (*Id.*)

### C.  Findings of Fact and Conclusions of Law

 The evidence unequivocally shows - and the Court finds – that, on multiple occasions

over a period of ten and a half months, Marshall failed to follow court-ordered deadlines, make

court-ordered appearances, participate in discovery and otherwise failed to follow the orders and

the local rules of this Court. Many of these failures were without any adequate justification. In

those instances where Marshall had some reasonable excuse for his conduct, the Court finds that

he either failed to bring these to the Court's attention in a timely fashion or otherwise failed to

take steps to remedy the situation in advance. Despite multiple orders issuing sanctions, multiple

warnings given to Marshall, and Marshall's assurance that the conduct would cease, it did not

cease.

 Marshall places much of the blame for his conduct on his reaction to the illness and death

of his mother which, by his own account, began in February of 2015 and ended on July 17, 2015

---

Doc. 59 at 8.) He admitted that he had done no research as to the correctness of his assumption nor had he called the
Court for clarification. (*Id*. at 8-9.)

when his mother died. But his conduct both pre-dates and post-dates this time period. For instance, although Marshall filed *Spears* on April 16, 2014, he took over 120 days to obtain a summons to serve process on the Defendant (*Spears*, Docs. 5-6.) Thus, when Marshall missed the July 24, 2015 court-ordered deadline to file a joint status report, (*Spears,* Doc. 2), the Magistrate Judge rescheduled the status conference for November 20, 2014 and re-set his deadline for filing the report until November 6, 2014. (*Spears*, Doc. 3.) Even then, Marshall failed to follow the Court's new deadline, and the Defendant was forced to ask for leave to file its status report separately, representing that Marshall did not respond to defense counsel's communications regarding the filing of a joint status report. (*Spears*, Doc. 16.)

In his written response to the Magistrate Judge's order to show cause why sanctions should not be imposed for failing to file the joint status report as ordered (*Spears*, Doc. 17; *see also Marshall*, Doc. 1 at 2-3), Marshall stated that "he ha[d] been out of state for 10 days taking care of a family emergency." (*Spears*, Doc. 19.) As noted by the Magistrate Judge, "Marshall did not provide any more details regarding the family emergency" (*Spears*, Doc. 45 at ¶ 7; *see also Marshall*, Doc. 1 at 3.) In his response to the current show cause order, he states he was "out of state due to a death in the family." (*Marshall*, Doc. 2-1 at 3.) At the hearing in this matter, Marshall could not explain why his 10 day trip out of state prevented him from responding to counsel and not filing a joint status report during the three and a half months the status conference had been scheduled. (*Marshall*, Doc. 4, Transcript of December 3, 2015 hearing at 17.)[5]

Then, without advising or gaining permission of the Court, Marshall failed to appear at the November 20, 2014 court-ordered scheduling conference, instead sending a "designee" or

---

[5] "All I can say is that I'm sorry for not complying with that deadline." (*Marshall* Doc. 3 at 17.)

"stand-in" lawyer (*Marshall*, Doc. 2-1 at 2) who did not represent Marshall's client, was not in

his firm  and was not enrolled as counsel in *Spears*. As stated by the Magistrate Judge:

> At no point in time prior to the conference did Mr. Marshall inform the
> undersigned that he had a conflict with the scheduling conference, that he would
> not attend the conference, or that an attorney who was not enrolled in the matter
> and did not represent Plaintiff would appear in his place.

 (*Spears*, Doc. 45 at ¶ 8; *see also*, *Marshall*, Doc. 1 at 3.) Marshall's written explanation, as well

as his verbal response at the hearing in this matter, was that he complied with the court's order to

attend the conference by sending, without notice to the court, another attorney who was not

enrolled in the case and who did not represent his client, protesting that "Counsel would like to

convey to this Honorable Court that he has never missed any court ordered court date in any

action referenced in this order to show cause." (*Marshall*, Doc. 2-1 at 1-2.; *see also Marshall*,

Doc. 4, Transcript of December 3, 2015 hearing at 8-16.)[6]

The Magistrate Judge ordered Marshall to appear personally on December 17, 2014 to

show cause why he should not be sanctioned for failing to submit a status report as ordered and

failing to appear at the scheduling conference. (*Spears*, Doc. 22; *see also Marshall*, Doc. 1 at 3.)

After appearing late for this show cause hearing, (*Spears*, Doc. 25) and offering the explanations

as recounted above, the Magistrate Judge ordered him to pay $306.00 in sanctions. (*Spears*, Doc.

27.)

The Court will not repeat here the detailed statements of the Magistrate and District

Judges, quoted above, as to Marshall's conduct in *Spears* and *Reams* during the period Marshall

claims to have been affected by his mother's illness beginning in February of 2015 and her death

---

[6] At the en banc hearing in this matter, Marshall conceded that the status conference was a "court ordered court
date" he was required to attend, (*Marshall*, Doc. 4 at 8), that he paid his "stand-in" attorney $200 per court
appearance to cover for him when he had a conflict (*Id*. at 14), and that this attorney had never met his client and did
not know what the case was about. (*Id*. at 15.)

of July 17, 2015, except to say Marshall's pattern of conduct continued. As the Magistrate Judge

noted in his Order to Show Cause of May 28, 2015:

> Plaintiff's counsel has previously failed to comply with court orders, failed to
> abide by representations he made to the court, and failed to participate in
> discovery… In what has become a pattern in this case, the court only learns of
> conflicts of plaintiff's counsel after deadlines are missed or he fails to comply
> with court orders. The court has no way of knowing whether these  personal
> issues have now been resolved and/or whether the client is aware of the potential
> for increasing sanctions for these repeated violations.

 (*Spears*, Doc. 40 at 1.)

Despite Marshall's July 28, 2015 assurance to this Court that this type of behavior would

not happen again (*Reams*, Doc. 48 at 2), this pattern of conduct did not cease after the death of

his mother. As detailed above, he ignored an order to file by September 24, 2015, a written

response to this Court's show cause order based on his mistaken belief, untested by any legal

research or a call to the Court, that his obligation to respond to the order was no longer to be

obeyed once he settled the underlying suit. He failed to fully read this Court's minute entry

specifically reminding him that such was not the case. And then, without calling the Court in

advance, arrived late for his contempt hearing on October 5, 2015.

In sum, over a period of ten and a half months, Marshall failed to obey eleven separate

orders of the court[7], was sanctioned twice[8] and warned at least once for these failures.[9] In

addition, he failed to engage in discovery (with two separate motions to compel granted against

his client),[10] and was twice late for his own show cause sanction hearings.[11] As outlined above,

---

[7] *Spears*, Docs. 3, 31, 33, 36, 37, 38, 40, 46 and *Reams* Docs. 34 and 41 are the documents containing the orders
violated. Some contain more than one order.
[8] *Spears*, Docs. 27 and 44.
[9] *Reams*, Doc. 48 at 2 ("The Court expressed to Mr. Marshall how his actions are affecting his clients….The Court
then advised Mr. Marshall that he faces some very serious consequences should the activity/behavior reoccur.")
[10] *Spears*, Docs. 33 and 37. "The record indicates that Plaintiff's failure to provide discovery responses is solely
attributable to the acts and omissions of his counsel, Mr. Marshall." (Doc. 45 at ¶ 25.)
[11] *Spears*, Doc. 27 at 2 and Doc. 59 at 4.

this pattern of behavior began before and ended after the time within which he claims to have been impacted by the illness and death of his mother. The Court therefore finds that the evidence clearly and convincingly demonstrates that Marshall willfully violated this Court's Local Rules by failing to act with reasonable diligence and promptness in representing a client, in knowingly disobeying his obligations under the rules of this Court and in failing to make reasonably diligent efforts to comply with proper discovery requests.

### D. Appropriate Sanctions

Having determined that the record supports a finding that Marshall violated La. Rules Prof'l Conduct 1.3, 3.4(c) and 3.4(d) (2015), the question becomes what sanctions are appropriate. The Order to Show Cause put Marshall on notice as to a wide range of possible sanctions including, but not limited to, "reprimand, ethics and professionalism training, suspension, disbarment and/or the payment of a civil fine." (Doc. 1 at 1, 12.) This Court's Local Rules provide for "such disciplinary action as the court may see fit" when willful noncompliance with a Local Rule has been established.

In addition, the Fifth Circuit has provided additional factors to consider: "In imposing a sanction after a finding of misconduct, a court should consider the duty violated, the attorney's mental state, the actual or potential injury caused by the attorney's misconduct, and the existence of aggravating or mitigating factors." *In re Sealed Appellant*, 194 F.3d at 673. These factors will be considered separately. *See In re Grodner*, No. 3:14-MC-00050-BAJ, 2014 WL 4365080, at *8 (M.D. La. Sept. 2, 2014), *aff'd*, 587 F. App'x 166 (5th Cir. 2014).

Marshall did not breach one, but three separate and extremely important duties: to his client, to the court and to the process. His breaches were not merely isolated lapses but an uninterrupted pattern of behavior. Had they been isolated lapses, Marshall would deserve no

17

more than he has already received: in some instances, the indulgence of the court; in others, sanctions imposed for specific violations. But the cumulative effect of repeated violations, despite the sanctions already imposed, causes this Court to conclude that sanctions harsher than mere reprimand are in order.

So too does the factor of potential injury to his client's cause. In *Reams*, the Court could easily have dismissed his client's case based on the totally inadequate opposition to defendant's dispositive motion. However, the Court ordered him to file a meaningful opposition or accede to the motion. Yet, even then his memorandum was not filed timely. In *Spears*, sanctions far harsher than those imposed, including those which might have directly and negatively impacted his client's case, could have been issued by the Magistrate and District Judges for the willful and repeated violations recited above. *See, e.g.* Fed. R. Civ. P. 37(b)(2)(A).

With regard to the attorney's mental state and mitigating and aggravating factors, the evidence is conflicting. The Court certainly understands and is sympathetic to the stress caused to Marshall by the serious illness and eventual death of his mother. But this sympathy must be tempered by several concerns. First, as pointed out by the Magistrate Judge, Marshall never made an effort to alert the court *in advance* of the deadlines regarding his situation:

> In what has become a pattern in this case, the court only learns of conflicts of plaintiff's counsel after deadlines are missed or he fails to comply with court orders. The court has no way of knowing whether these  personal issues have now been resolved and/or whether the client is aware of the potential for increasing sanctions for these repeated violations.

(*Spears*, Doc. 40 at 1; *see also Marshall*, Doc. 4, Transcript of the December 3, 2015 hearing at 17-18.)

Second, given the multiple orders compelling discovery responses and the multiple orders issuing sanctions, Marshall should have seriously considered getting additional help with his

practice or withdrawing altogether. Indeed, Marshall has conceded as much. "If counsel could turn back the hands of time, he would do things differently, such as…[e]ither withdraw from cases or enroll additional counsel so that matters would not be neglected." (*Marshall*, Doc. 2-1 at 6.)

Third, and perhaps most importantly, Marshall's conduct cannot be attributed solely to his reaction to his mother's illness and death. As is evident from the facts set forth above, Marshall's behavior both before and after this time period demonstrates serious gaps in knowledge and/or lapses of judgment, and neither of these can be laid at the feet of his mother's illness and death. This includes Marshall's sending an attorney not enrolled or representing his client to a court-ordered scheduling conference without notice to or the consent of the judge. It also includes Marshall's assumption that his duty to respond to a show cause order directed to him personally would somehow be cancelled when he settled his client's case.

Considering all of the relevant factors, the Court determines that a sanction of sixty (60) days suspension from practice in the Middle District of Louisiana and, in addition, a requirement that Marshall attend within the next 180 days, six hours of ethics and/or professionalism training focused on an attorney's duties to his client and to the court is appropriate. *Cf. In re White*, 97-1152 (La. 9/19/97), 699 So.2d 375 (suspending attorney for one year, with no deferral, for his failure to timely file an appellate brief, his failure to comply with several court orders, and his failure to attend a deposition in the disciplinary proceeding); *In re Vix*, 2008-2290 (La. 5/15/09), 11 So.3d 1090, *modified in part*, 2008-2290 (La. 5/21/10), 38 So.3d 892 (suspending attorney, whose "misconduct stemmed from poor management of her private practice while she was dealing with an excessive case load at the indigent defender's office and her mother's health problems," for two years, all but three months deferred, and imposing two years of supervised

probation, when she neglected several legal matters by, among other things, failing to file briefs and pleadings; failed to communicate with her clients; failed to timely refund unearned fees; and failed to cooperate with the disciplinary investigation);  *In re Miniclier*, 2011-1859 (La. 11/4/11), 74 So. 3d 687 (suspending attorney for three months, fully deferred, when he "violated Rule 3.4 [and Rule 8.4(d)] by continuing in his attempts to advance [certain] claims after [a federal] court repeatedly warned him that it was not going to allow those claims").

## V.    CONCLUSION

Accordingly, in light of the clear and convincing evidence showing that Marshall violated this District's Local Rules and Louisiana Rules of Professional Conduct 1.3, 4.4(c) and 3.4(d),

**IT IS ORDERED** that **ANTHONY T. MARSHALL'S** admission to practice in the United States District Court for the Middle District of Louisiana is hereby suspended, effective immediately, for a period of **SIXTY (60) DAYS**.

**IT IS FURTHER ORDERED THAT**, within 180 days of this order, **ANTHONY T. MARSHALL** is to obtain six (6) hours of continuing legal education ethics and/or professionalism training and to present proof of same to the Clerk of the United States District Court for the Middle District of Louisiana.

**IT IS FURTHER ORDERED** that the Clerk of Court shall forward this Order of

Suspension to the Clerks of Court for the U.S. Fifth Circuit Court of Appeals, for the Eastern

District of Louisiana and for the Western District of Louisiana.

Baton Rouge, La., this ___6th___ day of _____January_____, 2016.


**BRIAN A. JACKSON**
**CHIEF JUDGE**

**SHELLY D. DICK**
**DISTRICT JUDGE**


**JOHN W. deGRAVELLES**
**DISTRICT JUDGE**

**JAMES J. BRADY**
**SENIOR JUDGE**

21